GAIL M. MYERS, Ancillary Administratrix of the Estate of DARRYL MYERS, Plaintiff v. SHIRLEY McGRADY, THOMAS W. HIGGINS, MICHAEL P. MURPHY, JAMES F. FOUST, WILLIAM A. SPENCER, JR., and VERIAN LADSON, Successor Representative for the Estate of J.C. MYERS, JR., Defendants, and SHIRLEY McGRADY, THOMAS W. HIGGINS, JAMES F. FOUST, WILLIAM A. SPENCER, JR., and VERIAN LADSON, Successor Representative for the Estate of J.C. MYERS, JR., Third-Party Plaintiffs v. NORTH CAROLINA DIVISION OF FOREST RESOURCES, a Division of the NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, Third-Party Defendants

No. 391A04-2

(Filed 5 May 2006)

**Immunity— public duty doctrine—state agency—management of forest fires**

The public duty doctrine applies to negligence claims filed under the Tort Claims Act against the North Carolina Department of Environment and Natural Resources (NCDENR) for alleged mismanagement of forest fires, and the trial court should have allowed NCDENR's motion to dismiss in an action arising from an automobile accident in the smoke on a highway adjacent to a forest fire. The statutory powers and duties of NCDENR and appointed forest rangers are designed to protect the citizens of North Carolina as a whole; NCDENR does not owe a specific duty to plaintiff or to third-party plaintiffs.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 170 N.C. App. 501, 613 S.E.2d 334 (2005), affirming orders entered 24 February 2004 by Judge Donald W. Stephens and 23 March 2004 by Judge Abraham Penn Jones in Superior Court, Durham County. On 18 August 2005, the Supreme Court allowed third-party defendants' petition for discretionary review as to an additional issue. Heard in the Supreme Court 13 February 2006.

*Twiggs, Beskind, Strickland & Rabenau, P.A., by Jerome P. Trehy, Jr., for plaintiff-appellee.*

*Kennedy Covington Lobdell & Hickman, LLP, by F. Fincher Jarrell, for defendant/third-party plaintiff-appellees James F. Foust and William A. Spencer, Jr.*

*Law Offices of Douglas F. DeBank, by Douglas F. DeBank, for defendant/third-party plaintiff-appellee Verian Ladson.*

*Roy Cooper, Attorney General, by Christopher G. Browning, Jr., Solicitor General, Robert T. Hargett and Amar Majmundar, Special Deputy Attorneys General, and Laura J. Gendy, Assistant Attorney General, for third-party defendant-appellants.*

WAINWRIGHT, Justice.

This negligence action arises from a four-vehicle collision on Interstate Highway 95 (I-95) in Northampton County, North Carolina. At the time of the collision on 9 June 2002, thick smoke from a nearby forest fire combined with fog to obscure the southbound lanes of I-95. Two individuals, Darryl Myers and J.C. Myers, were killed in the collision.

Plaintiff Gail Myers is the administratrix of Darryl Myers' estate. Defendants Shirley McGrady, Thomas Higgins, Michael Murphy, James Foust, and William Spencer, Jr. drove and/or owned vehicles involved in the collision. J.C. Myers, Jr. drove the vehicle in which Darryl Myers rode as a passenger, and defendant Verian Ladson is a representative for J.C. Myers, Jr.'s estate.

On 1 August 2003, plaintiff filed suit against defendants in Durham County Superior Court alleging that the negligence of each driver proximately caused Darryl Myer's death. Plaintiff's complaint states that at approximately 4:40 a.m. on 9 June 2002, defendant McGrady stopped the vehicle she was driving in the southbound travel lane of I-95 to switch seats with defendant Higgins, the owner of the vehicle. Defendant McGrady allegedly did not want to drive more because her vision was obscured by smoke and fog. Defendant Murphy then collided with the rear of defendant Higgins' vehicle; defendant Foust drove a tractor-trailer into the rear of defendant Murphy's vehicle; and J.C. Myers, Jr. drove into the rear of the Foust tractor-trailer, killing himself and Darryl Myers. Plaintiff alleged that defendant Foust's liability was imputed to the owner of the tractor-trailer, defendant Spencer.

Defendants impleaded Forest Ranger Michael Bennett and the North Carolina Division of Forest Resources (NCDFR), a division of the Department of Environment and Natural Resources (NCDENR), pursuant to North Carolina Rule of Civil Procedure 14(a) and (c). Ranger Bennett, an employee of NCDFR, responded to the forest fire on 7 June 2002 at the request of the Gaston Volunteer Fire Department. Defendants' third-party complaints alleged that the fire

MYERS v. McGRADY

[360 N.C. 460 (2006)]

adjacent to I-95 smoldered in three to five acres of woodland for approximately two days before the accident, that Ranger Bennett visited the scene three times before the collision and was aware of the fire, and that Ranger Bennett knew or should have known that the fire produced open flames and dense smoke dangerous to motorists in the southbound lanes of I-95. Defendants' third-party complaints further alleged that Ranger Bennett failed to control the fire; failed to warn approaching motorists; failed to monitor the weather, wind, and smoke conditions; and failed to protect the traveling public.

On 9 January 2004, third-party defendants Ranger Bennett and NCDFR filed a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted pursuant to the public duty doctrine and public officer immunity. On 23 February 2004, the trial court allowed the motion to dismiss as to third-party defendant Ranger Bennett and denied the motion as to NCDFR. Plaintiff subsequently sought and received permission to amend her original complaint to include a direct negligence claim against NCDFR as well. The Court of Appeals agreed to hear NCDFR's interlocutory appeal, and, in a divided opinion, affirmed the orders of the trial court.

The determinative question before this Court is whether NCDFR, a state agency, may be liable in negligence for failure to control a naturally occurring forest fire or failing to make safe a public highway adjacent to the fire.[1] We observe that the alleged negligence arises

1. Before 1979, N.C.G.S. § 143-291 authorized the North Carolina Industrial Commission to hear tort claims in which the plaintiff alleged injury resulting from a "negligent act" of a state employee or agent. N.C.G.S. § 143-291 (1978). Based upon this statutory language, this Court consistently held that N.C.G.S. § 143-291 did not waive sovereign immunity with respect to suits alleging injury from negligent omissions or failures to act. *Ayscue v. N.C. State Highway Comm'n*, 270 N.C. 100, 153 S.E.2d 823 (1967) (per curiam); *Midgett v. N.C. State Highway Comm'n*, 265 N.C. 373, 144 S.E.2d 121 (1965); *Wrape v. N.C. State Highway Comm'n*, 263 N.C. 499, 139 S.E.2d 570 (1965); *Flynn v. N.C. State Highway & Pub. Works Comm'n*, 244 N.C. 617, 94 S.E.2d 571 (1956).

In 1977 the General Assembly amended N.C.G.S. § 143-291 by substituting the word "negligence" for the phrase "negligent act." Act of June 10, 1977, Ch. 529, sec. 1, 1977 N.C. Sess. Laws 627, 627 (amending the Tort Claims Act to provide coverage for negligence) (effective 1 July 1979). To date, this Court has not considered the effect of the 1977 amendment on its pre-existing case law. Although the North Carolina Court of Appeals has recognized that the amendment "enlarges the rights of persons seeking to recover for injuries resulting from State employees' negligence," *Watson v. N.C. Dep't of Corr.*, 47 N.C. App. 718, 721, 268 S.E.2d 546, 549, *disc. rev. denied*, 301 N.C. 239, 283 S.E.2d 135-36 (1980), that court subsequently stated that N.C.G.S. § 143-291(a) does not allow recovery for injuries resulting from negligent omissions, *Isenhour v. Hutto*, 129 N.C. App. 596, 601, 501 S.E.2d 78, 82 (1998) ("It appears to be well established that,

from the agency's purported failure to perform a statutory duty owed to the general public and that this duty is generally unenforceable by individual plaintiffs in tort. Thus, we apply the common law public duty doctrine to the powers and duties conferred upon NCDENR by N.C.G.S. §§ 113-51, -52, -54, and -55 to prevent, control and extinguish forest fires. Because NCDENR does not owe a specific duty to this individual plaintiff and these third-party plaintiffs, but a general duty to the public at large, the trial court should have granted NCDFR's motion to dismiss pursuant to North Carolina Rule of Civil Procedure 12(b)(6) and motion for judgment on the pleadings pursuant to Rule 12(c).

A civil plaintiff seeking to sue a state agency for negligence for failure to carry out statutorily delegated responsibilities must overcome two limitations that are not present in suits against private individuals: (1) the State must have waived sovereign immunity as to the plaintiff's claim, and (2) the duty alleged by the plaintiff may not be a public duty previously recognized by this Court. If the State has not waived sovereign immunity, then it is immune from the plaintiff's suit in North Carolina courts. *Charlotte-Mecklenburg Hosp. Auth. v. N.C. Indus. Comm'n*, 336 N.C. 200, 207, 443 S.E.2d 716, 721 (1994) ("The doctrine of sovereign immunity—that the state cannot be sued in its own courts without its consent—is firmly established in North Carolina law."), *superseded by statute on other grounds*, Act of April 19, 1993, ch. 679, sec 2.3, 1993 N.C. Sess. Laws 394, 397-99, *as recognized in Carolina Med. Ctr. v. Employers & Carriers Listed in Exhibit A*, —— N.C. App. ——, 616 S.E.2d 588 (2005). If the plaintiff alleges negligence by failure to carry out a recognized public duty, and the State does not owe a corresponding special duty of care to the plaintiff individually, then the plaintiff has failed to state a claim in negligence. *Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 196, 499 S.E.2d 747, 749-50 (1998) ("Without any distinct duty to any specific individual, the [governmental] entity cannot be held liable."); *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 716 (stating that when a "governmental entity owes no particular duty to any individual claimant, it cannot be held liable for negligence for

under the Tort Claims Act, recovery may be had for injuries resulting from negligent action but not for negligent omissions . . . ."), *aff'd in part and rev'd in part on other grounds*, 350 N.C. 601, 517 S.E.2d 121 (1999).

The parties *sub judice* have not raised the distinction between negligent act and negligent omission on appeal. Thus, our decision today expresses no opinion as to whether the facts alleged by plaintiff are properly classified as alleging negligent acts or negligent omissions. Further, we make no statement concerning the effect of the 1977 amendment on our existing case law.

failure to carry out its statutory duties"), *cert. denied,* 525 U.S. 1016, 142 L. Ed. 2d 449 (1998). This is so because governmental agencies, which serve the public at large, do not generally owe enforceable duties to specific individuals. *Hunt,* 348 N.C. at 196, 499 S.E.2d at 749 ("The general rule is that a governmental entity acts for the benefit of the general public . . . .").

The North Carolina General Assembly has enacted a limited waiver of sovereign immunity for negligence actions filed against the State and its agents and employees:

> The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State. The Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina. If the Commission finds that there was negligence on the part of an officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority that was the proximate cause of the injury and that there was no contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted, the Commission shall determine the amount of damages that the claimant is entitled to be paid, including medical and other expenses, and by appropriate order direct the payment of damages as provided in subsection (a1) of this section, but in no event shall the amount of damages awarded exceed the amounts authorized in G.S. [§] 143-299.2 cumulatively to all claimants on account of injury and damage to any one person arising out of a single occurrence. Community colleges and technical colleges shall be deemed State agencies for purposes of this Article. The fact that a claim may be brought under more than one Article under this Chapter shall not increase the foregoing maximum liability of the State.

N.C.G.S. § 143-291(a) (2005). This waiver is set forth in its entirety in N.C.G.S. §§ 143-291 to -300.1 and is commonly known as the North Carolina State Tort Claims Act. Although the Tort Claims Act estab-

lishes the North Carolina Industrial Commission as the appropriate forum to decide <u>direct</u> negligence actions against the State and its agents, N.C.G.S. § 1A-1, Rule 14(c) explicitly provides that the State may be <u>impleaded</u> by defendants in any tort action, including actions filed in superior court: "Notwithstanding the provisions of the Tort Claims Act, the State of North Carolina may be made a . . . third-party defendant . . . in any tort action."

Here, defendants impleaded Ranger Bennett and NCDFR as permitted by N.C.G.S. § 1A-1, Rule 14(c). Plaintiff then amended her complaint to include a direct negligence action against NCDFR pursuant to N.C.G.S. § 1A-1, Rule 14(a), which provides that "[t]he plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." However, NCDFR argues that the General Assembly has not waived sovereign immunity with respect to <u>direct</u> negligence actions in superior court because the Tort Claims Act requires direct negligence actions against state agencies to be determined by the North Carolina Industrial Commission; thus, the superior court lacks jurisdiction with regard to plaintiff's amended negligence complaint against NCDFR.[2] Because we hold that each negligence claim alleged against NCDFR arises from the agency's performance of a statutorily defined public duty, which claim is unenforceable by plaintiff or third-party plaintiffs individually, we do not reach the merits of the State's sovereign immunity argument.

The public duty doctrine is a separate rule of common law negligence that may limit tort liability, even when the State has waived sovereign immunity. The rule provides that when a governmental

---

2. In *Teachy v. Coble Dairies, Inc.*, the Department of Transportation of the State of North Carolina (NCDOT) was impleaded by the defendants into a wrongful death action arising from a car accident. 306 N.C. 324, 293 S.E.2d 182 (1982). Defendants alleged that NCDOT was negligent in maintaining a traffic light at the intersection where the accident occurred. *Id.* at 326, 293 S.E.2d at 183. NCDOT filed a motion to dismiss defendants' third-party complaint for lack of jurisdiction based upon the doctrine of sovereign immunity. *Id.* This Court held that "the doctrine of sovereign immunity does not prevent the State from being joined as a *third-party defendant* to a tort action brought in the courts of North Carolina." *Id.* (emphasis added). In so doing, the Court considered, but did not decide, whether sovereign immunity is a matter of personal or subject matter jurisdiction. *Id.* at 326-28, 293 S.E.2d at 183-84. The Court did recognize that the distinction may determine whether the State can immediately appeal a trial court order denying its motion to dismiss on sovereign immunity grounds. *Id.* Following *Teachy*, this Court has simply referred to the sovereign immunity bar as fatal to "jurisdiction" without further specification. *See Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 524 n.1, 539-40, 299 S.E.2d 618, 619 n.1, 628 (1983).

entity owes a duty to the general public, particularly a statutory duty, individual plaintiffs may not enforce the duty in tort. *See Hunt,* 348 N.C. 192, 499 S.E.2d 747; *Stone,* 347 N.C. 473, 495 S.E.2d 711; *Braswell v. Braswell,* 330 N.C. 363, 410 S.E.2d 897 (1991). By limiting liability, the rule recognizes that the legislative and executive branches must often allocate limited resources for the benefit of the public at large and permits governmental entities to carry out statutory responsibilities without incurring risk of overwhelming liability. *Stone,* 347 N.C. at 481, 495 S.E.2d at 716. *Cf. Braswell,* 330 N.C. at 370-71, 410 S.E.2d at 901 (applying the public duty doctrine to limit the liability of <u>local government</u> law enforcement while recognizing the limited resources of local governmental entities). " '[A] government ought to be free to enact laws for the *public protection* without thereby exposing its supporting taxpayers . . . to liability for failures of omission in its attempt to enforce them. It is better to have such laws, even haphazardly enforced, than not to have them at all.' " *Stone,* 347 N.C. at 481, 495 S.E.2d at 716 (quoting *Grogan v. Commonwealth,* 577 S.W.2d 4, 6 (Ky.) (alterations in original), *cert. denied,* 444 U.S. 835, 62 L. Ed. 2d 46 (1979)).

In *Stone v. North Carolina Department of Labor,* this Court determined that the General Assembly incorporated the public duty doctrine into the Tort Claims Act. 347 N.C. at 482, 495 S.E.2d at 716. In so doing, the Court emphasized that the plain language of N.C.G.S. § 143-291(a) waives immunity only " 'under circumstances where [the State], *if a private person,* would be liable to the claimant in accordance with the laws of North Carolina.' " *Id.* at 478, 495 S.E.2d at 714 (emphasis added) (quoting N.C.G.S. § 143-291). Because "[p]rivate persons do not possess public duties," the Court reasoned that the General Assembly intended the public duty doctrine to apply to negligence actions filed against state governmental entities pursuant to the Tort Claims Act. *Id.* at 478-79, 495 S.E.2d at 714. "If the State were held liable for performing or failing to perform an obligation to the public at large, the State would have liability when a private person could *not.*" *Id.* at 479, 495 S.E.2d at 714.

In two previous negligence cases filed against the North Carolina Department of Labor under the Tort Claims Act, this Court has held that the public duty doctrine limits the State's liability. *Stone,* 347 N.C. 473, 495 S.E.2d 711; *Hunt,* 348 N.C. 192, 499 S.E.2d 747. In *Stone* and *Hunt* the plaintiffs alleged injuries resulting from the agency's failure to carry out inspections and ensure compliance with the North

Carolina Administrative Code.[3] *Hunt*, 348 N.C. 192, 499 S.E.2d 747 (plaintiff alleged injury arising from negligent failure of the Department of Labor to inspect an amusement park ride to ensure compliance with the administrative code); *Stone*, 347 N.C. 473, 495 S.E.2d 711 (plaintiffs alleged injury resulting from negligent failure of the Occupational Safety and Health Division of the Department of Labor to inspect their workplace and ensure compliance with North Carolina Occupational Safety and Health Act standards). Today, we apply the public duty doctrine to the powers and duties conferred upon NCDENR by N.C.G.S. §§ 113-51, -52, -54, and -55 to prevent, control and extinguish forest fires.

N.C.G.S. § 113-51 defines the fire control powers of NCDENR, stating:

> The Department of Environment and Natural Resources *may take such action as it may deem necessary to provide for the prevention and control of forest fires in any and all parts of this State*, and it is hereby authorized to enter into an agreement with the Secretary of Agriculture of the United States for the protection of the forested watersheds of streams in this State.

N.C.G.S. § 113-51(a) (2005) (emphasis added). N.C.G.S. § 113-52 permits the Secretary of Environment and Natural Resources to "appoint one county forest ranger and one or more deputy forest rangers in each county of the State in which, after careful investigation, the amount of forestland and the risks from forest fires shall, *in his judgment,* warrant the establishment of a forest fire organization." *Id.* § 113-52 (2005) (emphasis added). N.C.G.S. § 113-54, which sets forth the duties of forest rangers, provides in part:

> *Forest rangers shall have charge of measures for controlling forest fires,* protection of forests from pests and diseases, and the development and improvement of the forests for maximum production of forest products; shall post along highways and in

---

3. In *Braswell*, 330 N.C. 363, 410 S.E.2d 897, this Court applied the public duty doctrine to limit the liability of a <u>county</u> when plaintiff alleged that the sheriff negligently failed to protect the wife of a deputy sheriff from fatal spousal abuse. *But see Lovelace v. City of Shelby*, 351 N.C. 458, 526 S.E.2d 652 (2000) (declining to extend the public duty doctrine to plaintiff's claim against a municipality for negligent dispatch of fire-fighting personnel to plaintiff's home). However, we note that the Tort Claims Act does not apply to local governments and their agents. In such cases, waiver of sovereign immunity is generally accomplished through the purchase of liability insurance. *See* N.C.G.S. § 153A-435 (2005); *id.* § 160A-485 (2005).

other conspicuous places copies of the forest fire laws and warnings against fires, which shall be supplied by the Secretary [of Environment and Natural Resources]; shall patrol and man lookout towers and other points during dry and dangerous seasons under the direction of the Secretary; *and shall perform such other acts and duties as shall be considered necessary by the Secretary in the protection, development and improvement of the forested area of each of the counties within the State.*

*Id.* § 113-54 (2005) (emphasis added). Finally, N.C.G.S. § 113-55 directs that "[f]orest rangers shall prevent and extinguish forest fires and shall have *control and direction* of all persons and equipment while engaged in the extinguishing of forest fires." (Emphasis added.)

The General Assembly has vested NCDENR with broad powers to protect the health and well-being of the general public and North Carolina's forests. Pursuant to N.C.G.S. §§ 113-51, -52, -54 and -55, NCDENR and the Secretary of Environment and Natural Resources possess discretion to evaluate the risks posed by forest fires to North Carolina counties, appoint forest rangers in response to those risks, and direct rangers in the control and prevention of forest fires. Fire fighting decisions made by NCDENR, NCDFR, and state forest rangers concern the allocation of limited resources to address statewide needs and are made in furtherance of a statutory duty to the citizens of North Carolina at large. These decisions are not generally the type of decisions for which the State is liable to private citizens in tort. Accordingly, this Court will not judicially impose overwhelming liability on NCDENR and NCDFR for failure to prevent personal injury resulting from forest fires.

We hold that the public duty doctrine applies to negligence claims filed under the Tort Claims Act against NCDENR for alleged mismanagement of forest fires. Because N.C.G.S. §§ 113-51, -52, -54, and -55, which set forth the powers and duties of NCDENR and appointed state forest rangers, are designed to protect the citizens of North Carolina as a whole, NCDENR does not owe a specific duty to plaintiff or to third-party plaintiffs; thus, these parties have failed to state a negligence claim for which relief may be granted, and the trial court should have allowed NCDFR's motion to dismiss and motion for judgment on the pleadings.

Although this Court has recognized two common law exceptions to the public duty doctrine known as the "special duty" and "special relationship" exceptions, plaintiff and third-party plaintiffs have not

LEWIS v. BEACHVIEW EXXON SERV.

[360 N.C. 469 (2006)]

raised the exceptions in this case. *See Hunt,* 348 N.C. at 197, 499 S.E.2d at 750; *Stone,* 347 N.C. at 482, 495 S.E.2d at 717. We further note that N.C.G.S. §§ 113-51, -52, -54, and -55 are readily distinguishable from statutes which create a special duty or specific obligation to a particular class of individuals and to which the North Carolina Court of Appeals and courts in other states have declined to apply the public duty doctrine. Our decision today expresses no opinion regarding application of the public duty doctrine to statutes that are arguably designed to protect a narrower class of individuals.

For the reasons stated above, we reverse and remand the decision of the North Carolina Court of Appeals. The Court of Appeals shall further remand this case to Durham County Superior Court for proceedings consistent with this opinion.

REVERSED AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED.